763 A.2d 264

**NATIONAL WASTE MANAGERS, INC.**

**v.**

**ANNE ARUNDEL COUNTY, Maryland.**

**No. 1717, Sept. Term, 1999.**

Court of Special Appeals of Maryland.

Dec. 6, 2000.

586

Steven P. Resnick, Annapolis, for appellant.

Julie T. Sweeney, Sr. Asst. County Attorney (Linda M. Schuett, County Attorney, on the brief), Annapolis, for appellee.

Argued before MURPHY, C.J., and HOLLANDER and KENNEY, JJ.

HOLLANDER, Judge.

The protracted history [1] of this case arises from the tireless efforts of National Waste Managers, Inc. ("National"), appellant, to establish and operate a rubble landfill in Odenton (the "Landfill"), and the equally persistent opposition of Anne Arundel County (the "County"), appellee, to that project.[2] The County's opposition to the Landfill has impeded National's effort to acquire the requisite permit from the Maryland Department of the Environment ("MDE"). Moreover, the seemingly endless dispute concerning the proposed Landfill has spawned numerous legal battles in various courts of this State, including many appellate proceedings.

The current appeal concerns the denial of National's requests for injunctive relief and an appropriate purging provi-

---

[1.] Our opinion in this appeal was originally filed as an unreported decision. We have published it pursuant to the County's request.

[2.] National, a wholly-owned subsidiary of the Halle Companies ("Halle"), was formerly known as Chesapeake Terrace, Inc. ("Chesapeake"). We shall refer to Halle, Chesapeake, and National collectively as "National."

sion. National sought to require the County to take the necessary steps to enable MDE to process National's request for a State rubble landfill permit, which National must procure before it may legally operate the Landfill. In addition, following a remand from this Court in connection with an earlier appeal, National asked the trial court to set an appropriate purge provision with respect to the trial court's finding of contempt by the County. These requests resulted in two orders issued by the Circuit Court for Anne Arundel County, both dated September 10, 1999. In one, the trial court declined to establish a purge provision, reasoning that it was "unnecessary" because appellant's special exception expired by operation of law on August 17, 1997. In the other, the court denied National's related requests for injunctive relief. Thereafter, National noted this appeal,[3] which the County has moved to dismiss.

Appellant presents four rather lengthy questions for our review:

I. Did the trial court (Lerner, J.) err in denying injunctive relief on the ground that a modification to purging provisions to a contempt order had modified the underlying judgments that Anne Arundel County violated State law by deleting all reference to Chesapeake Terrace from its SWMP, where the original judgments had become law of the case by their affirmance by this Court and the denial of a writ of certiorari by the Court of Appeals, and where this Court specifically rejected the argument raised in the County's prior appeal, holding that the underlying writ and order had not been modified?

II. Did the trial court improperly deny injunctive relief on the ground that [National] failed to safeguard its special exception approval and that such approval expired because [National] did not open and operate

---

**3.** Maryland Code (1998 Repl.Vol., 1999 Supp.), § 12–303 of the Courts and Judicial Proceedings Article ("C.J."), authorizes an interlocutory appeal from the denial of an injunction request.

its rubble landfill within two years of the decision of the "approving authority," as set forth in Section 12–107, where [National] has spent over nine years in litigation with the County seeking to protect its special exception rights and was prevented, as a matter of law, from opening within the two year period because of the County's adjudged violation of State law?

III. Did the two year period set forth in Section 12–107 start to run, where Section 12–242(C) of the County Code explicitly modified the term of rubble land fill special exceptions to run concurrent with the issuance of a permit by MDE?

IV. Was the two year period of Section 12–107 tolled by the County's actions and NWM's resort to litigation to protect its special exception rights?

The County offers five grounds to support its motion to dismiss the appeal:

A. The Denial of Appellant's Motion for Appropriate Purging Provision Does Not Constitute An Appealable Order.

B. Even if [National] Is Permitted to Raise on Appeal the Issue of [the] Purging Provision of the Contempt Order Issued Finally on August 21, 1997, the Appeal is Untimely.

C. [National] Is Not Entitled to Appellate Relief Because It Failed to Exhaust Administrative Remedies.

D. The Issues Raised by This Appeal Have Been Rendered Moot.

E. The Law of the Case Dictates that the Appeal Be Dismissed.

For the reasons set forth below, we shall vacate the court's orders and remand for further proceedings.

## FACTUAL BACKGROUND [4]

The issues presented on appeal do not require a full recitation of the long and complex history of this case. Instead, we concentrate on the facts pertinent to the issues before us, gleaned primarily from the record and earlier appellate opinions.[5]

In 1990, National sought administrative approval from the County for a special exception and variance to operate a rubble landfill. After a County hearing officer denied National's request for a special exception and a variance, National appealed to the County's Board of Appeals (the "Board"). In 1993, after a *de novo* review that produced 2000 pages of testimony and numerous documents, the Board granted the special exception and variance requests, subject to several conditions. Thereafter, numerous community associations and several individual property owners sought judicial review of the Board's decision in the circuit court. The County became a party to the proceeding when the circuit court granted its motion to intervene.

Prior to the judicial review hearing in the circuit court with regard to the special exception, a bill was introduced before the County Council that included the Landfill in the County's Solid Waste Management Plan ("SWMP").[6] Subsequently,

---

**4.** We note that appellant failed to include a table of contents with the Record Extract, as required by Md. Rule 8–504(a)(1). Instead, we have been provided with an "Index" that has page numbers that do not correspond to the documents in the Record Extract. The County, too, has failed to include a table of contents for the appendix included with its brief. *See* Md. Rules 8–501(h) and 8–504(a)(1).

**5.** *See Halle Cos. v. Crofton Civic Ass'n,* 339 Md. 131, 661 A.2d 682 (1995); *Anne Arundel County v. National Waste Managers, Inc.,* No. 810, Sept. Term 1997, 120 Md.App. 741 (filed Mar. 25, 1998), *cert. denied,* 350 Md. 275, 711 A.2d 867 (1998); *National Waste Managers, Inc. v. Anne Arundel County,* No. 365, Sept. Term 1998 (July 16, 1998), *cert. denied,* 351 Md. 286, 718 A.2d 234 (1998); *Anne Arundel County v. National Waste Managers, Inc.,* No. 96, Sept. Term 1998, 123 Md.App. 795 (filed Sept. 29, 1998), *cert. denied,* 352 Md. 336 (1998); *National Waste Managers, Inc. v. Anne Arundel County,* No. 365, Sept. Term 1998 (July 16, 1998), *cert. denied,* 351 Md. 286, 718 A.2d 234 (1998).

**6.** COMAR 26.03.03.02(A) provides: "Each county shall maintain a current, comprehensive, [SWMP] which covers at least the succeeding 10–year period."

the legislation was amended to omit any reference to the Landfill.

At about the same time that National began the special exception process, it also began the permit application process with MDE. *See* Code of Maryland Regulations ("COMAR") 26.04.07.14–.16. In 1991, National submitted its request to MDE for approval of the third and final phase of its application. Because the Landfill was not included in the County's SWMP in May 1994, MDE suspended its consideration of National's permit application, pending receipt from the County of a written statement ("Statement of Conformance") advising that the proposed Landfill satisfied the applicable County zoning and land use requirements, and was in conformity with the County's SWMP. *See* Md.Code (1982, 1996 Repl.Vol., 1999 Supp.), § 9–210(a)(3) of the Environment Article ("E.A.").

On judicial review, the circuit court reversed the Board's approval of the special exception and variance, on the ground that the Board exceeded its *de novo* authority by imposing a certain condition to its approval. National then noted an appeal, and the matter proceeded directly to the Court of Appeals. In an opinion filed on July 17, 1995, that Court reversed, upholding the Board's condition as "justifiable," because it related "to the public health, safety and welfare." *See Halle Cos. v. Crofton Civic Ass'n,* 339 Md. 131, 149, 661 A.2d 682 (1995) *("National I ")*. Reconsideration was denied on August 17, 1995.

Despite the decision in *National I,* the County declined to send a statement of conformance to MDE. Accordingly, on October 9, 1996, National filed a seven-count complaint against the County in the Circuit Court for Anne Arundel County. The first three counts are relevant here. In the first count, National sought a writ of mandamus requiring the County to include the Landfill in its SWMP. In the second count, National also requested a writ of mandamus, directing the County to issue the Statement of Conformance. The third count sought a declaratory judgment that: (1) National is entitled to have the Landfill included in the SWMP; (2) National is entitled to

delivery of the Statement of Conformance to MDE; and (3) the County acted unlawfully in failing to include the Landfill in the 1994 amendments to the SWMP.

On November 1, 1996, National filed a motion for partial summary judgment, limited to counts 1 and 3, in which it asked the court to: (1) issue a writ of mandamus directing the County to include the Landfill in its SWMP, and (2) declare that the County's failure to include the Landfill in its SWMP was unlawful. Although Count 3 asked for both a declaration requiring inclusion of the project in the SWMP *and* a Statement of Conformance, the motion itself only sought, based on Count 3, a declaration "that the County's failure to include the [Landfill] in its [SWMP] violates [National's] legal rights under State law (Count 3)." The County filed a cross-motion for summary judgment on all counts.

Following a hearing on February 28, 1997, the circuit court (Greene, J.) denied the County's motion but granted partial summary judgment to National. In its ruling, the court said that National was "entitled to partial summary judgment on count 1, mandamus, ordering that the [National] project be included in the SWM Plan...." It also ruled that National was entitled to a declaration that the County had violated State law by failing to include the proposed Landfill in the SWMP. Accordingly, the court required the County to amend the SWMP to include the proposed facility. Nevertheless, the trial court recognized that "final authority" for the project rested with the State, and that the court's determination "only gives [National] a right to be included in the Plan," but "does not ... require the MDE to issue a permit." In other words, it was up to MDE to determine whether to issue the permit. The court's opinion and order of March 26, 1997, further provided, in part:

ORDERED and DECLARED that the [Landfill] be included in the Anne Arundel County [SWMP]; and it is further

ORDERED and DECLARED that the County in deleting all reference to [the Landfill] as a proposed facility in

Bill 14–94 invaded the State's permit review prerogative; and it is further

ORDERED and DECLARED that the County shall amend the [SWMP] to include [the Landfill] as a proposed facility consistent with the law.

On April 18, 1997, the County filed a motion to revise the order of March 26, 1997, as well as a motion to stay enforcement of the judgment, pending resolution of the motion. Less than a week later, while the revisory motion was pending, the County noted an appeal to this Court from the order of March 26, 1997. *See Anne Arundel County v. National Waste Managers, Inc.,* No. 810, Sept. Term 1997, 120 Md.App. 741 (filed Mar. 25, 1998) (*"National II"*), *cert. den'd,* 350 Md. 275, 711 A.2d 867 (1998). The County also filed a second motion to stay enforcement of the March 26th order, based on the pending appeal. After the circuit court denied the motions, the County petitioned this Court to stay the order of March 26, 1997, pending disposition of the appeal. We denied that request on June 27, 1997. On July 16, 1997, the Court of Appeals imposed a brief stay of enforcement pending its review of a petition for certiorari.

On June 3, 1997, in the midst of the County's unsuccessful efforts to obtain a stay of judgment, National filed its first petition for contempt, alleging that the County had failed to comply with the order of March 26, 1997. National averred:

It has been more than two months since this court issued its order declaring that the County violated the law and requiring the County to remedy its unlawful action by complying with the law immediately. The County has done nothing to comply.

Therefore, National requested, *inter alia:*

That this Court pass an Order requiring the Defendant to commence action within 24 hours necessary to include the Project in its Solid Waste Management Plan, and to deliver to the State within 24 hours the written statement that the project meets all applicable County zoning and land use

requirements and is in conformity with the County's Solid Waste Management Plan.

In its answer, the County defended largely on the grounds that it had appealed the circuit court decision, and it had obtained a stay of enforcement from the Court of Appeals on July 16, 1997, rendering the circuit court without jurisdiction to take further action until resolution of the appeal in this Court. After the Court of Appeals denied the County's request for stay, the County filed an amended answer to the contempt petition, denying that it was in contempt.

Following a hearing, the circuit court found the County in contempt of its order of March 26, 1997. In an oral opinion, the court reasoned:

In this case, it has been a long struggle, a long battle between [National] and the county to get the development of [National's] property. The Court drafted an Opinion in March of 1997 in light of the request for mandamus, a written Opinion, which in reading it again, it is very clear and very concise as to what the Court was directing.

On August 1, 1997, the circuit court issued a contempt order (the "original contempt order") stating, in part:

1. [The County] is hereby adjudged in contempt of this Court's order dated March 26, 1997, and is hereby fined the sum of Two Hundred and Fifty Thousand Dollars ($250,000) for its contempt of the Order of this Court, and

2. That [the County] may purge itself of that contempt by taking each and every of [sic] the following actions:

A. [The County], through its Department of Public Works shall provide within five days of the date of this Order, its written statement to [MDE] that the [Landfill] meets all applicable county zoning and land use requirements and is in conformity with the County's [SWMP]; and

B. [The County] take [sic] all steps consistent with law to act upon an ordinance to include [the Landfill] in the Plan as an emergency measure, effective as of the date which it is enacted; and

C. [The County] shall enact that measure at the earliest possible date, represented by the County to be September 2, 1997; and,

D. [The County's] role in landfill regulation has been limited by [MDE]. Therefore, [the County] may add to the language set forth in the proposed ordinance submitted to this Court a statement of the history of the proceedings related to [the Landfill], but shall delete the proposed language, cited below:

> Due to the amount of time that has passed since the initial application, [MDE] has required updated technical report submissions prior to scheduling the public hearing on the proposed plan. Many of the site specific informa- tion such as facility size, design specifications, buffer zones, environmental controls, waste types and quantities, waste sources, facility service capacity and life projects, therefore are not known at this time. Once all this information is made available to the County, this Plan will be amended to include such information as well as the manner by which the facility will operate.

(Footnotes omitted).

Thereafter, the County complied with § 2.A of the original contempt order when, on August 4, 1997, the Deputy Director of the County's Department of Public Works sent a Statement of Conformance to MDE. It said:

> Pursuant to the enclosed judicial order, the Anne Arundel County Department of Public Works informs you that the [Landfill] meets all applicable [C]ounty zoning and land use requirements and is in conformity with the County [SWMP].

As we shall see, *infra*, the County's Statement of Conform- ance had a rather short life span.

On August 21, 1997, the circuit court amended its original contempt order, *sua sponte* (the "amended contempt order"), pursuant to C.J. § 6–408. The amended contempt order provided, in part:

> The issue here is not the process by which the County complies with State law. That matter was not presented to the Court. Therefore, the County is not restricted in using

methods available to it to accomplish its legislative mandate, as declared in the order of this Court dated March 26, 1997.

Therefore, it is . . .

**ORDERED,** that provisions 2.B, C, and D, of the [original contempt order], are, hereby deleted as those provisions are unnecessary in view of the County's certification of compliance with provision 2.A.

**ORDERED,** that [the County] shall comply with State law, as interpreted above by the Court, so that MDE may consider whether the [Landfill] is needed.

**ORDERED,** that all other provisions of [the original contempt order] remain in full force and effect.

The trial court issued the amended contempt order, which deleted paragraphs 2.B, 2.C, and 2.D of the original contempt order, *after* it became aware that the County had complied with ¶ 2.A of the original contempt order. Obviously, the court did not then know that the County would later withdraw the Statement by Conformance by advising MDE that the special exception had expired. In doing so, the County, in effect, rendered the Statement of Conformance, issued to satisfy ¶ 2.A, of no help with regard to National's effort to secure the necessary MDE permit.

On August 28, 1997, during the pendency of the County's appeal from the Order of March 26, 1997, the County noted yet another appeal to this Court, which challenged the findings of contempt in both the original and amended contempt orders. *Anne Arundel County v. National Waste Managers, Inc.,* No. 96, Sept. Term 1998, 123 Md.App. 795 (filed Sept. 29, 1998) ("*National III* "), *cert. denied,* 352 Md. 336, 722 A.2d 63 (1998).

While both of the County's appeals were pending, the County sent two letters to MDE, one on November 19, 1997, and the other on December 10, 1997. Both letters advised MDE that National's special exception had expired by operation of law in August 1997.[7] In the letter of November 19,

---

7. Curiously, in the factual summary of its brief, appellant only mentions the letter of November 19, 1997. We also note that the County advised

1997, the County's Department of Planning and Code Enforcement wrote to MDE stating that, pursuant to Anne Arundel County Code, Art. 28, § 12–107(a) (1985 & Supp.1999) ("A.A.C.C."),[8] National's "special exception approval obtained . . . on December 12, 1993, was rescinded by operation of law effective August 23, 1997[sic]."

Thus, the County asserted that the special exception expired on August 23, 1997, even though it had written to MDE less than three weeks earlier, on August 4, 1997, advising that National's proposed landfill "is in conformity with the County [SWMP]." The County's letters spawned the filing by National in December 1997 of a second contempt petition. In that petition, National complained that the County had failed to comply with either the original or amended contempt order.

A few months later, on March 25, 1998, this Court filed its opinion in *National II*, affirming the Order of March 26, 1997. That Order, as we noted, granted partial summary judgment to National with respect to counts 1 and 3 of its complaint. The Court of Appeals subsequently denied certiorari.

On April 17, 1998, the County filed an amended answer to National's second contempt petition.[9] The County claimed, *inter alia*, that it complied with the purge provision when, on August 4, 1997, it notified MDE that National was in conformity with the SWMP. The County also noted that the amended contempt order "deleted any directive that the [C]ounty's SWM Plan be amended to include" the Landfill. Further, the County asserted that National's special exception approval expired by operation of law on August 17, 1997, and National "failed to apply for extension of the approval." Therefore, it

MDE that the special exception expired on August 23, 1997. The County later corrected that assertion, stating that "the actual expiration date was August 17, 1997."

**8.** Unless otherwise noted, all references to A.A.C.C. are to Article 28, zoning.

**9.** Its first answer was filed one day earlier and was not materially different.

claimed that, pursuant to A.A.C.C. § 12–107, the County had the right to inform MDE that the special exception had expired, which it did by letter of November 19, 1997.

According to the County, National was required by A.A.C.C. § 12–107 to operate the Landfill within two years from its receipt of the special exception. The County recognized that the two-year period set forth in § 12–107 "was tolled by the litigation arising directly from the grant of special exception approval. Such litigation concluded with the issuance of the court of special appeals's [sic] mandate on August 17, 1995." [10] Thus, according to the County, the two-year period was tolled until August 17, 1995, and expired on August 17, 1997. The County also maintained that the lower court's orders did not bar the County from notifying MDE "of the current status of an applicant's special exception approval," nor did they excuse National from its obligations to comply with local law and "safeguard" its special exception.

A hearing was held on National's second contempt petition on April 20, 1998. In a memorandum opinion and order filed on April 22, 1998, the court (Lerner, J.) denied National's second contempt petition, reasoning, in part:

> The County cannot be held in contempt of Judge Greene's [original contempt] order as long as the County has complied with the order. The order specifically required that the County take the steps listed [in § 2 of the original contempt order] in order to purge the $250,000 fine for contempt. The County did comply with Judge Greene's order. The County sent a letter to MDE on August 4, 1997, stating that the [Landfill] "meets all applicable county zoning and land use requirements and is in conformity with the County [SWMP]."
>
> Meanwhile [National's] special exception approval which was granted on December 12, 1993 expired on August 17,

---

**10.** We note that it was the Court of Appeals that denied reconsideration in *National I* on August 17, 1995.

1997. The applicable section of the Zoning Article of the Anne Arundel County Code specifically states:

§ 12–107 RESCISSION.

(a) Except as provided in subsection (b) or subsection (c) of this section, approval of a special exception is rescinded by operation of law if:

(1) action to implement the use is not begun within one year after the decision of the approving authority; and

(2) the use is not completed and in operation within two years after the decision.

*Even though [National] received its special exception approval on December 12, 1993, and was to expire on December 12, 1995, due to the two year time frame provided by the County Code, the approval date was extended until August 17, 1995. The approval date was tolled until August 17, 1995, because that was the date of the Court of Special Appeals mandate [sic]* [11]. *therefore, the special exception approval was to expire on August 17, 1997.*

The County cannot be held in contempt of a court order for [National's] failure to comply with specific provisions of the County Code. The County was well within its right to notify MDE on November 19, 1997, of the expiration of [National's] special exceptions approval. *It was [National's] responsibility, not the County's, to safeguard it* [sic] *special exception approval by requesting an extension prior to its expiration on August 17, 1997.* Therefore, because [National] did not seek an extension of its special exceptions approval, it has lost the approval. The County cannot be held in contempt for such a result.

(Emphasis added) (citations omitted).

On May 1, 1998, National filed a motion to alter, amend, and revise the judgment denying its second petition for contempt, which was denied on May 19, 1998. As a result, National filed

---

**11.** *See* Footnote 10, *supra.*

an "amended" notice of appeal [12] to this Court on May 28, 1998, challenging the circuit court's denials of the second contempt petition and the revisory motion. Pursuant to the County's motion, we dismissed that appeal on July 16, 1998.[13]

Subsequently, on September 29, 1998, we issued our opinion in *National III*, which affirmed the finding of contempt embodied in the original and amended contempt orders. *National III*, slip op. at 15. Nevertheless, we vacated the purge provision set forth in § 2.A of the original contempt order. We did so because National only moved for summary judgment with respect to Counts 1 and 3 of its initial complaint, and the Statement of Conformance that was the essence of the purge provision in ¶ 2.A was the subject of Count 2. Although Count 3 also included a request for the Statement of Conformance, National did not ask for relief pursuant to that count in its summary judgment motion. Consequently, we concluded that ¶ 2.A of the original contempt order exceeded the scope of the March 26th order. Because the court deleted the other purge provisions when it issued its Amended Contempt Order, we remanded "to the circuit court for reconsideration of an appropriate purging provision." *Id.*, slip op. at 18.

On December 1, 1998, appellant moved for partial summary judgment as to Count 3(b) of its complaint, seeking a declaratory judgment that the County acted unlawfully by refusing to issue a written Statement of Conformance to MDE pursuant to E.A. § 9–210, informing MDE that the Landfill conforms with the SWMP and other zoning and land use regulations. National also requested an injunction directing the County to provide the statement of conformance.

---

12. It is unclear from the record if an earlier notice of appeal was filed as to these specific complaints.

13. Although the mandate is in the record with respect to the dismissal, we are unable to locate in the record our Order dismissing the appeal, the County's motion to dismiss the appeal, or National's opposition to it. Therefore, we do not know the basis for the motion or the reason for our decision to dismiss the appeal.

Thereafter, on or about July 7, 1999, National filed an "Amendment by Interlineation," amending National's October 9, 1996, complaint by adding Count 8 as well as several new factual averments. Count 8 read, in pertinent part:

The County's action in forwarding the November 19, 1998, [sic] letter to MDE notifying MDE that [National's] special exception had been rescinded, has unlawfully blocked the processing of [National's] state rubblefill permit application and has unlawfully interfered with the preemptive state statutory scheme for rubble licensing. . . .

Wherefore, [National] prays that this Court:

(a) Issue an injunction directing the County to forward a written statement to MDE withdrawing its letter dated November 19, 1998[sic] and to notify MDE that the [Landfill] meets all applicable zoning and land use requirements. . . . [14]

National also filed a "Request for the Imposition of an Appropriate Purging Provision" (the "purge motion") and two separate injunction requests, each styled "Request For Injunction." The first asked the court to issue a permanent injunction requiring the County to place the Landfill in its SWMP. The second sought an injunction in accordance with Count 8 of National's amended complaint. Although it is unclear from the record, it appears that National's summary judgment motion of December 1, 1998, its requests for injunction of July 7, 1999, and the purge motion, were all before the court at an evidentiary hearing on September 9, 1999. The next day, the court (Lerner, J.) issued the two orders that are at issue here. In one, the court refused to grant appellant's requests for injunctions. The other denied the purge motion. The court did not specifically address National's December 1, 1998, summary judgment motion, however.

With respect to the Order denying the injunction requests, the court explained the basis of its decision in a footnote, stating: "Judge Greene's Amendment deleted the request that

---

14. Appellant did not mention the County's letter of December 10, 1997.

the County include the Chesapeake Terrace Facility in the solid waste management plan by Order dated August 21, 1997. Judge Greene deemed the plan unnecessary." The court did not address the significance, if any, of Judge Greene's decision to issue the Amended Contempt Order after he was informed that the County had complied on August 4, 1997 with ¶ 2.A of the original contempt order. With respect to the other Order denying the purge motion, the court also provided its reasoning in a footnote. It said:

This issue is moot. On April 21, 1998, there was a denial of the second Petition for Contempt. This court found that the County acted properly in contacting the Maryland Department of Environment that the special exception granted [to National] expired on August 17, 1997 and there was no need for the county to include the property in the [SWMP].

Appellant noted the present appeal (*"National IV"*) from both orders of September 10, 1999. We shall include additional facts in our discussion.

## DISCUSSION

We begin our analysis with consideration of a threshold question: Did National's special exception expire by operation of law on August 17, 1997, as the County contends and as the court below ruled. If National's special exception expired in December 1997, the County maintains that National would not have been entitled to the injunctive relief requested at the hearing in September 1999, or to a revised purge order.

A.A.C.C., Art. 28, § 12–107 is relevant here. It provides:

(a) Except as provided in subsection (b) or subsection (c) of this section, *approval of a special exception is rescinded by operation of law if:*

(1) action to implement the use is not begun within one year after the decision of the approving authority; and

(2) *the use is not completed and in operation within two years after the decision.*

(b) A special exception for a clay and borrow pit or sand and gravel operation is rescinded by operation of law if action to implement the use is not begun within one year after approval of all necessary permits, but no later than two years from the date of the granting of the special exception, unless the applicant has diligently pursued all permits and not received them despite due diligence.

(c) With respect to a special exception for a substation, the approving authority may, for good cause shown, extend the time periods set forth in subsections (a)(1) and (2) of this section by up to two and one-half years each.

(Emphasis added).

National claims that A.A.C.C. § 12–107 must be read in conjunction with A.A.C.C. § 12–242. Section 12–242(b) sets forth specific criteria applicable to rubble landfills. In addition, § 12–242(c) provides that "[t]he term of a special exception for a sanitary landfill operated solely for the disposal of rubble shall be concurrent with a permit or any extension of a permit for the operation that is issued by the State." Thus, appellant contends that, through the enactment of § 12–242(c), the County Council "necessarily modified the operation of § 12–107(a) to run *from* the issuance" of an MDE rubble landfill permit. Because National does not yet have a permit from MDE, National claims that, logically, the term of its special exception cannot expire under § 12–107(a), before it even begins under § 12–242(c). National argues: "As landfills cannot open as a matter of law without the issuance of a permit from MDE, it can hardly be concluded that the special exception approval will expire during that state permit process." National also maintains that § 12–242 "brings rubble fills in line with the law addressing those sand and gravel operations." Therefore, appellant asks us to conclude that, through enactment of § 12–242(c), the County Council sought to treat rubble landfills in the same manner as other land uses specified in § 12–107(b).

Appellee counters, *inter alia,* that National's contentions concerning §§ 12–107 and 12–242 contravene well established

tenets of statutory construction. The County contends that the plain language of § 12–107 clearly provides that a special exception lapses by law if the use is not in operation within two years after issuance of the special exception. Moreover, the County maintains that the permit process provides for exceptions to the two year limit only in limited circumstances that do not apply here. For example, § 12–107(b) provides for an exception only for clay and borrow pits and sand and gravel operations. A special exception for these operations expires "one year after approval of all necessary permits," or two years after the date of the granting of the special exception, whichever comes first, unless "the applicant has diligently pursued all permits and not received them despite due diligence." In addition, § 12–107(c) only provides for a "good cause" extension with respect to substations, which are not involved in this case. As the statute does not include rubble landfills, the County argues that the limited exception provided by § 12–242 does not benefit National.

We shall focus on National's contention that the time period set forth in § 12–107 was tolled by the entire course and duration of the litigation, as well as the County's conduct. Notwithstanding the zoning approval, National claims that the County prevented it from operating the Landfill within the time prescribed by § 12–107 and, therefore, the special exception did not lapse.

It is undisputed that the special exception alone did not entitle National to operate the Landfill; National could not lawfully operate the Landfill without the necessary permit from MDE. According to National, the County's failure, since 1994, to include the Landfill in the SWMP precluded National from obtaining the requisite permit from MDE. Moreover, although the Court of Appeals issued its decision in *National I* in 1995, the parties have been engaged in ongoing litigation, since 1996, by which National has attempted to force the County to place the proposed Landfill in the SWMP. Given the facts and circumstances attendant here, we are persuaded by National's claim that the two-year period set forth in § 12–

107(a) was tolled during the entire course of the litigation in this case. We explain.

We begin by noting that the County has readily acknowledged that the principle of tolling has some application in this case. According to the County, "the two-year period set forth in [§ 12–107 of] the [County] code was tolled by the litigation arising directly from the grant of special exception approval." Thus, the County conceded below, as it does here, that National's special exception, which was granted on December 12, 1993, did not expire two years later on December 12, 1995. Rather, the County maintains that the special exception was valid until August 17, 1997, which was two years from the date on which the Court of Appeals denied reconsideration in *National I. Halle,* 339 Md. 131, 661 A.2d 682. But, because National did not implement the special exception by the tolled date, the County contends the special exception expired two years later, on August 17, 1997, pursuant to § 12–107.

The circuit court adopted the County's view as to tolling. It expressly determined that the two-year period set forth in § 12–107(a) was "tolled" pending resolution of *National I,* involving the direct challenge to the special exception.

Both the County and the trial court seemingly ignored the history of extensive litigation involving the parties, arising from the County's failure or refusal to take the appropriate action to enable National to pursue acquisition of the permit from MDE, in order for National to implement the special exception. Moreover, neither the County nor the court addressed why the continued litigation in this case does not have the same tolling effect on § 12–107 as did the first round of litigation in *National I.*

In its brief, the County asserted that National "had, at the very least, between August 1995 and August 1997 to implement the use or to seek an extension, [but] it failed to do so." The County argues that National could have and should have sought "a variance from the time limits" of § 12–107, pursuant to A.A.C.C. § 16–101. Because it failed to do so, the County

contends that the special exception lapsed. Section 16–101 states:

### § 16–101. General powers and duties of Administrative Hearing Officer.

(a) The Administrative Hearing Officer shall conduct a public hearing on a petition filed for changes or reclassification of the use of property. The Administrative Hearing Officer shall grant or deny the change or reclassification in accordance with law.

(b) The Administrative Hearing Officer may grant variances from and make special exceptions to this article, subject to the provisions of this article.

(c) The Administrative Hearing Officer may impose additional restrictions, conditions, or limitations applying to a zoning map amendment, special exception, or variance as may be considered appropriate to preserve, improve, or protect the general character and design of the land or improvements, or of the surrounding or adjacent land and improvements. After the zoning or rezoning of land, the Administrative Hearing Officer is authorized to approve or disapprove the design of buildings, construction, landscaping, or other improvements, alterations, or changes made or to be made on the subject land to assure conformity with the intent and purpose of this article.

The County has not referred us to any authority that suggests that § 16–101 applies under the particular circumstances of this case. Cf. *Cromwell v. Ward*, 102 Md.App. 691, 719, 651 A.2d 424 (1995) (stating that a variance must be based on uniqueness of difficulties with respect to the particular land). Indeed, we do not see how National would have been entitled to obtain an extension of the special exception pursuant to § 16–101. Alternatively, in a footnote, the County refers us to two New York cases to support its claim that, even if § 16–101 does not apply here, "an approving authority has the discretion to extend special exception approval." Whether such discretionary authority exists is beside the point. The alleged discretionary authority does not support

the County's position that National was *required* to seek an extension.

Additionally, the County asserts that appellant's "cause does not warrant the application of equitable relief." It could only reach that conclusion by overlooking what happened in the period after the Court of Appeals denied reconsideration in *National I* on August 17, 1995. *See Halle,* 339 Md. at 131, 661 A.2d 682. As we noted, this matter arises from National's suit, filed against the County in 1996, seeking to enforce National's right to include the Landfill in the County's SWMP. National prevailed when the trial court awarded partial summary judgment to appellant in March 1997, "ordering that [National's] project be included in the SWM plan" and issuing "a declaration that the County has violated the law in failing to do so ." National still could not obtain MDE review, however, because the County challenged the court's ruling on appeal. That challenge failed when, in March 1998, this Court, *inter alia,* upheld the trial court's Order of March 26, 1997, by which the County was ordered to include the Landfill in the SWMP. *See National II.* After the County was found in contempt in August 1998 for failing to abide by the Order of March 26, 1997, the County sought to overturn that finding on appeal. Again, the County was rebuffed when we issued our decision in *National III* in September 1998. There, we recognized *in dicta* that we had before us "the third in a series of appeals involving *the County's attempts to block National's efforts to operate a rubble landfill. . . . " Id.,* slip op. at 1 (emphasis added).

It is clear that, since 1994, with the exception of the brief period from August 4, 1998 to November 19, 1998, when the County sent MDE the Statement of Conformance because of the purge provision, the County has never taken any meaningful steps to include the Landfill in the SWMP. Therefore, MDE has not been able to undertake review of National's permit request, despite zoning approval from the Board. Although the trial and appellate courts of this State have ruled against the County virtually every step of the way, National is no further along in its quest to operate the Landfill than it

was when it first began the project almost a decade ago. To the contrary, if the County is correct that the special exception has now expired, National's position has deteriorated substantially. Indeed, National will have lost the proverbial war despite winning almost every battle.

To be sure, we do not fault the parties for exercising their legal rights. At the same time, we cannot disregard that delay is an inherent consequence of litigation, and the County's repeated attempts to litigate National's right to proceed with the Landfill ultimately made it impossible for National to comply with § 12–107. If the County were correct in its analysis as to tolling, it would mean that a developer facing a time-related condition could almost always be thwarted in its efforts by the inevitable delay resulting from litigation, regardless of the merits; the right to proceed would necessarily expire before a court could rule otherwise. We cannot accept that logic, which elevates legal gamesmanship to new heights. Here, National did not comply with § 12–107 because the County's exercise of its rights made it impossible for National to do so.

We have not uncovered any Maryland cases discussing the concept of tolling in the context of this case. Nor have we been referred to any applicable Maryland cases. Nevertheless, other authorities suggest, by analogy, that the tolling principle ought to apply to the circumstances of this case.

The County acknowledges that § 12–242 "was intended to statutorily capture the judicial doctrine of 'vested rights.' " It distinguishes the present case from a vested rights case, however, because National never acquired a permit. The County contends that when an entity has obtained a permit, it has obtained a right "deserving of a higher level of protection and should not be lost simply through the passage of time." To be sure, a special exception is not a permit. Nevertheless, we do not believe the outcome of this case necessarily depends on National's status as a permittee.

Like the special exception in issue here, permits are often conditioned upon commencement of the particular use

within a specified period. 4 Ziegler, Rathkopf's The Law of Zoning and Planning, § 50.03 (4th ed. Rev.1994). The majority view provides that a permittee may acquire vested rights to continue construction, or *"to initiate and continue a use"* when, in "good faith," and acting with diligence, the permittee "1) made a substantial change of position in relation to the land, 2) made substantial expenditures, or 3) incurred substantial obligations." *Id.,* § 50.04 (emphasis added).

 Moreover, Rathkopf recognizes that circumstances may arise that toll the applicable time period. If a municipality "willfully delays processing an application in order to prevent an applicant from securing vested rights through substantial construction . . . the courts grant the permittee a period of time to attempt to secure that state of completion that will vest his right thereto." *Id.,* § 50.03. Further, the time period in issue is ordinarily tolled during litigation "for a period equal to the time that elapsed . . ." as a result of the litigation. *Id.,* § 50.04. In addition, when "a municipality, by action or inaction, prevents, interrupts, or interferes with a permittee's efforts to continue work to completion, the time period is tolled." *Id.,* § 50.03.

The case of *Fromer v. Two Hundred Post Associates,* 32 Conn.App. 799, 631 A.2d 347 (1993), is particularly instructive. There, a challenge was lodged to the extension of a wetlands permit issued to a developer. The permit was conditioned upon the developer obtaining a zoning permit and commencing significant activity within one year of issuance of the permit. Subsequently, the plaintiff claimed that the permit expired "by the passage of time." *Id.* at 350. The court noted, however, that the "defendants have been involved with the present application for an inland wetlands permit since 1987 [(i.e., 6 years)] because of the appeals brought by a single plaintiff," *id.,* who challenged every phase of the process, such as zoning site plan approval and coastal area management site plan approval. Accordingly, the court held "that, on the facts of this case, in which a valid permit was issued to conduct a regulated activity within a specified time period and appeals

from the granting of the necessary permits to conduct that activity were not resolved within the time period during which the activity was required to begin, that time period is tolled until all litigation is completed." *Id.* at 349. The court's reasoning is compelling:

> In this case, the defendant[s] complied with all the applicable regulations in obtaining their permits, and the plaintiff exercised his legal right opposing the granting of the permits before the appropriate boards and the courts. The defendant[s] prevailed both before the regulating agencies and in the courts. Yet, six years later, the plaintiff is before this court arguing that because of the passage of time the inland wetlands permit has expired.

> *The regulatory process is not designed to be a spider's web, snaring one who follows all the regulations and statutes, obtains all the necessary permits, and successfully defends a series of appeals, but then loses his right to proceed because the passage of time has caused the permits to expire.*

*Id.* at 353.

*Cardinale v. Ottawa Reg'l. Planning Comm'n,* 89 Ohio App.3d 747, 627 N.E.2d 611 (1993), is equally helpful. In that case, a developer challenged the lower court's refusal to stay the expiration of a conditional plat approval granted by the planning commission. Although the developer had obtained preliminary approval, he had to satisfy certain conditions within a year. In the meantime, several adjoining landowners challenged the plat approval. Accordingly, the developer requested an extension to complete the conditions, but the request was denied.

On appeal, the developer claimed, *inter alia,* that the pendency of the litigation should toll the time limit because it prevented him "from timely satisfying conditions attached to a final plat approval...." *Id.* at 614. Further, the developer argued that "the net effect of the appeal, in combination with an inflexible time requirement, is that any 'nimby' has the capacity to block a project merely by bringing suit." *Id.* at

615 (footnote omitted). The court agreed, stating: "The inherent delays in the normal course of a lawsuit may then effectuate the remedy an opponent seeks without any court ever reaching the merits of the case." *Id.* Moreover, the court labeled as "unjust" the "specter of the adversaries of development prevailing without a hearing on the merits...." *Id.* Therefore, the court concluded that, "when it is equitable to do so," the developer's time within which to comply with certain conditions should be tolled, if the developer "is prevented from satisfying the named conditions by the legal intervention of third-party adversaries...." *Id.*

*Belfer v. Bldg. Comm'r of Boston*, 363 Mass. 439, 444, 294 N.E.2d 857, 860 (Mass.1973), also provides guidance. There, Carol Management Company ("Carol") filed an application for a building permit requesting permission to erect a multi-story building. The permit was denied on the ground that the proposed building violated certain provisions of the local zoning code. Carol appealed to the board of appeal and obtained the necessary variances, which entitled Carol to a building permit for two years. By statute, the variances would expire if not used within two years from issuance. The issuance of variances was challenged on appeal by persons claiming to be aggrieved. Consequently, Carol sought declaratory relief, asking the court to rule that the appeal challenging the variances tolled the two year period during which the variances had to be used. The court concluded that "relief from time limitations ... where a legal impediment exists to the use of a benefit, should ... be given where an appeal from the granting of the variance creates ... real practical impediments to the use of a benefit." *Id.* at 860. It reasoned that "[o]therwise a variance which was lawfully awarded can be frustrated by the delay inherent in an appeal" and "[u]nless an appeal tolls the time period, many variances would be meaningless." *Id.*

We also consider noteworthy the case of *Preseault v. Wheel*, 132 Vt. 247, 315 A.2d 244 (Vt.1974). There, the permit was issued to a developer to construct family houses, but the permit was only valid for a year. The developer did not start

.construction within a year because of several "legal battles" with adjoining landowners. 315 A.2d at 245. Meanwhile, the city had changed its zoning ordinance so that the development no longer complied with the new law, and the builder was unable to renew the permit because of the change in the zoning law and the failure to commence construction. Moreover, there was no "specific process" for renewal. *Id.* The developer sued for declaratory and equitable relief, alleging that he had acquired a vested right to the permit. The court agreed.

The court recognized the right of a municipality to establish a "limit to the duration of a building permit" in order to "control the use and development of land in the face of changing conditions." *Id.* at 247. Indeed, the court was mindful that some developers would "do nothing," and then belatedly "commence construction distasteful to, and long proscribed by, the municipality." *Id.* But, even though the builder in question had not begun construction, he had expended substantial sums for architectural, surveying, and legal fees, and the court believed that his efforts should not be rendered "worthless" by the conduct of a municipality that subsequently deemed the project "nonconforming." *Id.* The court explained:

> [R]ather than sitting on his permit the plaintiff, through counsel, has spent a substantial amount of time sitting and standing in courtrooms . . ., trying to maintain the foothold he obtained during the short period of time when the City . . . approved of his development project. The first decision below in the case of *In re Preseault, supra,* occurred on June 8, 1971. That decision followed hearings held prior to that date. This Court remanded when that controversy reached us, and the plaintiff asserts that litigation since that remand continues. The petition to enjoin the plaintiff from building the duplexes was brought by the adjacent landowners on June 21, 1971. This Court's decision in plaintiff's favor came on July 11, 1973, when it denied motion for reargument. . . .

315 A.2d at 247 (internal citations omitted). Moreover, the court added:

> We conclude that the more soundly reasoned cases from other jurisdictions support the proposition that where a valid permit is issued for a specified period, and where actual construction is delayed by litigation, involving parties who have standing to oppose construction, past that time, a permittee otherwise proceeding in good faith is entitled to reissuance of that permit, even where the zoning was meanwhile changed so that the project is nonconforming.
>
> * * *
>
> For this jurisdiction to employ a test under which a permittee must begin actual construction within one year and, at the same time, to not allow delay caused by litigation to serve as a modifying or exculpatory factor would produce greater inequity....

*Id.* at 247, 248.

We consider the reasoning of the *Preseault* court quite persuasive:

> For this Court to hold that a developer, proceeding as expeditiously as possible, must be denied reissuance of the permit he first applied for and received solely because his application for a second essential permit resulted in litigation of more than a year's duration would go beyond the desired and worthwhile goal of controlling development. *Such a holding would make development a pure gamble; success would depend on the whim of adversaries to litigate or not.* This result would contravene our announced policy that a good faith developer should be able to proceed with assurance.

*Id.* at 248 (emphasis added).

Here, judgment was entered in National's favor as to its claims for mandamus and declaratory action, by which the County was found in violation of the law for failing to include National's Landfill in the SWMP. That ruling was upheld on appeal. The County was subsequently found in contempt for failing to abide by those rulings, which was also upheld on

appeal. The Amended Order of Contempt merely deleted certain paragraphs because, as the circuit court noted, the "process" was not the issue, and the County had sent the Statement of Conformance. Were we to adopt the County's view, we would render hollow National's many legal victories merely because, during the time it took National to achieve those victories, the special exception expired.

In *Cardinale,* the court was "cautious to fashion a remedy with no greater breadth than necessary." *Cardinale,* 627 N.E.2d at 615. Recognizing that there are times when a developer might not proceed with due diligence, or that passage of time might "be accompanied by a change of conditions . . . which would cause . . . prejudice [to] a community," *id.,* that court declined to hold that a legal challenge "automatically extends the time for compliance with the conditions." *Id.* The reasoning of the *Cardinale* court seems eminently sound to us as a way of preventing misuse or abuse of the tolling principle.

In this case, however, we are not confronted with an allegation that the applicant failed to act diligently in attempting to use the special exception that was obtained. Nor has appellant's "good faith" been assailed. Because we disagree with the underlying foundation of the trial court's orders of September 10, 1999, finding that the special exception expired, we shall vacate those orders and remand for further consideration of the many other issues raised by the parties that were not addressed below.

**ORDERS OF SEPTEMBER 10, 1999 VACATED; CASE REMANDED TO THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY FOR FURTHER PROCEEDINGS. COSTS TO BE PAID BY APPELLEE.**