863 A.2d 976

**CITY OF BOWIE, Maryland**

v.

**PRINCE GEORGE'S COUNTY, Maryland Planning Board of the Maryland–National Capital Park and Planning Commission, et al.**

**No. 36, Sept. Term, 2004.**

Court of Appeals of Maryland.

Dec. 16, 2004.

---

414

Elissa D. Levan (Levan, Ferguson & Levan, P.A., Robert H. Levan, on brief), Columbia, for petitioner.

M. Andree Green (Lisa L. Jackson, Maryland-National Capital Park and Planning Com'n of Upper Marlboro), Edward C. Gibbs, Jr. (Gibbs & Haller, Lanham, Bruce L. Marcus, Marcus and Bonsib, Greenbelt, on brief), for respondents.

Argued before BELL, C. J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA, GREENE, JJ.

CATHELL, J.

This case arises from a Petition for Judicial Review filed by the City of Bowie, Maryland, (hereinafter "City" or "Bowie") petitioner, in the Circuit Court for Prince George's County of the decision of the Prince George's County, Maryland Planning Board of the Maryland–National Capital Park and Planning Commission (hereinafter "Board" or "Planning Board"), respondent, granting final plat[1] approval of a subdivision (hereinafter "final plat") on January 3, 2002, to Samuel T. Wood and Green Hotels, Inc. (together hereinafter "Green Hotels"), respondents, for the construction of Amber Ridge Shopping Center on a contiguous 19.04–acre parcel surrounded on three sides by the City of Bowie's corporate boundaries, though not situated within the City's confines. The circuit court affirmed the Board's approval, and petitioner appealed

---

1. As noted in the well-articulated, unpublished opinion in this case penned by Judge D. Eyler in the Court of Special Appeals, the terms "plat" and "plan" are used somewhat synonymously in the applicable sections of the Prince George's County Code dealing with subdivision regulations and in the portion of the statute concerning Prince George's County preliminary subdivision plans. *See* Md.Code (1957, 1997 Repl. Vol.), Art. 28, § 7–117. For clarity of reference, we shall continue to use the terms "plat" and "plan" interchangeably.

to the Court of Special Appeals. On February 25, 2004, in a comprehensive opinion addressing the questions presented by the petitioner, the intermediate appellate court affirmed the circuit court, upholding the Board's approval of the final plat. Petitioner then filed a Petition for Writ of Certiorari to this Court, which we granted. *Bowie v. Prince George's County*, 381 Md. 673, 851 A.2d 593 (2004). We address the three questions, as rephrased by the Court of Special Appeals, that the Petitioner presented to that court:

"I.   Did the Planning Board lack authority to approve a final plat for the Property while a petition for judicial review of its approval of the preliminary plan was pending in the circuit court?

II.   Did the Planning Board err in approving the final plat because the preliminary plan had expired before the application for final plat approval was filed?

III.   Did the Planning Board deny the City due process of law by failing to give notice of the filing of the application for final plat approval?"

We hold that an applicant may proceed to seek final plat approval of a subdivision, as provided by the Subdivision Regulations found in § 24–119(e) of the Prince George's County Code, during the time that the preliminary plat approval remains under judicial review, but the applicant undertakes such action at his own risk that the underlying preliminary approval may be invalidated at a future time, thus, potentially voiding all subsequent governmental actions dependent on that approval. In addition, we note that the statutory time period within which an applicant for subdivision must take further action after receiving preliminary plat of subdivision approval is to be tolled while litigation challenging the preliminary plat approval is filed and pending. Moreover, the Planning Board did not deny the City due process of law.

## I. Facts

The subdivision application in the case *sub judice* has an extensive history dating back to 1998 involving an elongated preliminary plat approval process.

## A. Preliminary Plat

In January 1998, pursuant to the applicable statutes [2] and to Prince George's County Code § 24–119,[3] Green Hotels sub-

---

**2.** Title 7 of Article 27 of the Annotated Code of Maryland, known as the Maryland–Washington Regional District Act (hereinafter "RDA"), the enabling statute, sets forth the statutory scheme governing the subdivision of land in certain areas of Montgomery and Prince George's Counties. Md.Code (1957, 1997 Repl.Vol.), Art. 28 §§ 7–101, *et seq.* This is the statute that was in effect at the time Green Hotels began its Amber Ridge Shopping Center approval process and the language of the below referenced sections of the RDA is not changed in the 2003 Replacement Volume. Specifically, § 7–115 of the RDA provides in relevant part:

"(a) *Approval of Commission required* . . .—(1) Except as provided . . . no plat of any subdivision of land within the regional district shall be admitted to the land records of . . . Prince George's County, or received or recorded by the clerks of the courts of these counties, until the plat has been submitted to and approved by the Commission and the approval endorsed in writing on the plat by its chairman and secretary. The filing or recordation of a plat of a subdivision without the approval of the Commission is void."

Section 7–117 articulates, *inter alia,* the general procedure for approval or disapproval of Prince George's County preliminary subdivision plans. This section states in pertinent part:

"The Commission shall approve or disapprove a subdivision plat within 30 days after its submission. Otherwise the plat shall be deemed to have been approved, and a certificate to that effect shall be issued by the Commission upon demand. In Prince George's County, each office to which a preliminary subdivision plan is referred shall return one copy of the plan to the planning board within 30 days with comments noted on it. If the reply is not made within 30 days by any office to whom referred, the plan shall be deemed to be approved by it. In Prince George's County, the Commission shall approve or disapprove a preliminary subdivision plan within 70 days after its submission. . . . Otherwise, the preliminary subdivision plan shall be deemed to have been approved, and a certificate to that effect shall be issued by the Commission upon demand. The applicant for the Commission's approval may waive either or both of these requirements and consent to the extension of the periods. . . ."

**3.** Prince George's County Code § 24–119, Subdivisions Subtitle, provides the procedures for major subdivisions which indicate, *inter alia,* the preliminary plat of subdivision approval process:

"(d) Preliminary Plat. The subdivider shall present a preliminary plat to the Planning Department, accompanied by a check or money order made payable to the Maryland–National Capital Park and Planning Commission, covering the filing fee.

mitted an application and a preliminary major subdivision plat (hereinafter "preliminary plat") to construct a 200,000 square foot shopping center on a 19.04–acre property located at 1600 Crain Highway, *i.e.,* U.S. Route 301, within the Prince George's County C–S–C (Commercial Shopping Center) zoning district. Although the property is not located within the Bowie corporate limits, the property immediately to the south, the Pointer Ridge Professional Center I Condominium Association ("Pointer Ridge") falls within Bowie's boundaries. Pursuant to Prince George's County Code § 24–124,[4] Green Hotels submitted the prerequisite Transportation Facilities Mitigation Plan ("TFMP") in conjunction with its preliminary plat. Green Hotels' TFMP proposal for traffic mitigation included improvements to nearby roads to lessen the trans-

---

(1) The Planning Department staff shall promptly check for completeness; accept a complete application for processing; reproduce the application; and send copies to all affected public agencies.

(2) Within four (4) weeks, the preliminary plat shall be reviewed by the Subdivision Review Committee.

(3) Adequate notice to the public shall be provided in accordance with the Rules of Procedure adopted by the Planning Board...."

4. Prince George's County Code § 24–124, Subdivisions Subtitle, requires that there be adequate roads for new development and provides in relevant part:

"(a) Before any preliminary plat may be approved, the Planning Board shall find that:

(1) There will be adequate access roads available to serve traffic which would be generated by the proposed subdivision, or there is a proposal for such roads on an adopted and approved master plan ...

(2) The traffic generated by the proposed subdivision will be accommodated on major intersections and major roadways within the established study area such that they will be functioning below the minimum peak-hour service levels adopted by the Planning Board in the 'Guidelines for the Analysis of the Traffic Impact of Development Proposals'....

(6) Consideration of certain mitigating actions is appropriate as defined in the approved 'Guidelines for Mitigation Actions'....

(D) Planning Board action on a mitigation action may be appealed to the District Council by the applicant or by any party of record."

It should be noted that this Court's decision in *County Council of Prince George's County v. Dutcher,* 365 Md. 399, 780 A.2d 1137 (2001), invalidated the District Council's intermediate review authority on preliminary plats of subdivision. *See infra.*

portation service impact of its development. The Planning Board conditionally approved the preliminary plat simultaneous with its approval of the TFMP, and memorialized its action by resolution on June 18, 1998.

Two somewhat parallel appeals ensued. The City sought review of the Board's approval of the TFMP through the Prince George's County Council, sitting as the District Council, which at the time functioned as an administrative appellate review body for such purposes,[5] and the City simultaneously filed a petition for judicial review in the Circuit Court for Prince George's County of all non-traffic mitigation issues of the preliminary plat approval. Pointer Ridge similarly filed for review in the circuit court. The circuit court stayed its review proceedings pending the District Council's determination on the transportation mitigation plan.

On April 10, 2000, the District Council reversed the Planning Board's approval of the TFMP, a decision from which Green Hotels and the Board each sought judicial review in the Circuit Court for Prince George's County. The circuit court consolidated these petitions with the still-pending petitions for judicial review of the Board's preliminary plat approval.

By letter dated May 1, 2000, Green Hotels requested a one-year extension in the validity of its approved preliminary plat of subdivision as provided by Prince George's County Code § 24–119(d)(5).[6] The City communicated its opposition to the extension request by letter dated June 21, 2000, urging that

---

5. As we have noted, *Dutcher* invalidated the District Council's jurisdiction to act in such a manner regarding preliminary plats of subdivision.

6. Section 24–119(d)(5) states in relevant part:
   "(d) Preliminary Plat. . . .
   (5) An approved preliminary plat of subdivision shall remain valid for two (2) years from the date of its approval, unless an extension of the validity period is granted.
   (A) Extensions of the validity of an approved preliminary plat may be granted by the Planning Board provided:
   (v) The validity of a preliminary plat consisting of . . . less than one hundred (100) gross acres of commercially or industrially-zoned land . . . shall not be extended more than one (1) year from the normal expiration of the approved preliminary plat. . . ."

the District Council's rejection of the TFMP had effectively invalidated the preliminary plat, as such a traffic mitigation plan is a prerequisite to preliminary plat approval. At its meeting the following day, the Board granted Green Hotels' extension request and, by letter dated July 13, 2000, apprised the latter that its final plat of subdivision was to be submitted no later than June 18, 2001. Approximately eleven months later, on June 8, 2001, Green Hotels submitted a final plat of subdivision to the Board, although the Board declined to accept, process or schedule for hearing the application on the basis of its position that the District Council's reversal of the TFMP rendered the preliminary plat approval invalid. The Board returned the final plat and application to Green Hotels' engineering professionals, and stated in a September 28, 2001, letter to Green Hotels' counsel the Board's belief that there existed no "currently approved Preliminary Plan with respect to the Amber Ridge property." The Board opined, however, that if the District Council's decision were to be reversed by the circuit court and the Board's approval subsequently reinstated, then "the validity period of the Preliminary Plan as contemplated by § 24–119 of the Prince George's County Code would start to run as of the [sic] that date" (alteration added).

Prior to the circuit court's determination on the consolidated matters, this Court issued its decision in *County Council of Prince George's County v. Dutcher,* 365 Md. 399, 780 A.2d 1137 (2001), which invalidated the District Council's authority and jurisdiction to provide administrative appellate review of planning board actions on preliminary plans of subdivision under Prince George's County Code § 24–124(a)(6)(D). *Id.* at 410, 780 A.2d at 1143–44. Applying this *Dutcher* holding, the circuit court issued an order on November 29, 2001, vacating the District Council's reversal of the Amber Ridge TFMP approval. Accordingly, Bowie amended its pending petition for judicial review of the Planning Board's preliminary plat approval to include an appeal of the Board's (reinstated) TFMP approval, which the circuit court likewise consolidated with the other petitions.

On January 11, 2002, the circuit court issued an opinion and order affirming the Planning Board's approvals of the preliminary plat, including the TFMP. Petitioner, as well as Pointer Ridge, timely appealed to the Court of Special Appeals which, in an unreported December 3, 2003 opinion, affirmed. The City petitioned this Court for a writ of certiorari which we declined to grant on April 12, 2004. *City of Bowie, Maryland v. Prince George's County*, 380 Md. 618, 846 A.2d 401 (2004). This denial effectively exhausted the City's avenues for appeal of the Planning Board's approval of Green Hotels' preliminary plat of subdivision.

## B. Final Plat

While the petitions for judicial review of the Board's approvals of the preliminary plat and of the TFMP remained pending in the circuit court, Green Hotels submitted to the Planning Board—*i.e.*, refiled—on December 21, 2001, its final plat of subdivision and its application for final plat approval. The Board scheduled the application for consideration at its meeting on January 3, 2002, *i.e.*, within the allotted thirty days in which it was required to take final action.[7]

A telephone call by a Planning Board staff member to a City staff member on the afternoon of Monday, December 31, 2001, alerted the City of the final plat application's scheduled

---

7. Prince George's County Code § 24–119(e) outlines the steps for submission and approval of a final plat:

"(e) Final Plat. Upon approval of the preliminary plat of subdivision, the subdivider may proceed to prepare the final plat(s). Such final plat(s) shall be prepared in accordance with the approved preliminary plat and shall include any modifications made by the Planning Board. A final plat may be filed no later than twenty-four (24) months from the original date of approval of the preliminary plat of subdivision, unless an extension of the approved preliminary plat is granted pursuant to the provisions of Subsection (d)(5), above. In all cases, a final plat shall be filed during the period in which the corresponding approved preliminary plat is valid.

(1) Within thirty (30) calendar days of acceptance, the Planning Board shall take final action, provided that, with the written consent of the applicant, this time period may be extended for up to thirty (30) additional calendar days. . . ."

consideration three days hence.[8] Counsel for Bowie faxed a letter to the Board on January 2, 2002, objecting to the consideration or approval of the final plat on both substantive and procedural grounds, asserting that "[t]he approval of the preliminary plat in this matter is not final because the matter is pending upon petition for judicial review in the Circuit Court for Prince George's County."

The hearing proceeded as scheduled with counsel for the City, as well as other parties who had registered objections to the preliminary plat, in attendance. In articulating the purpose for the hearing on the final plat, the Board Chairman explained, "For us, the sole issue is [whether] that final plat [is] in conformance with the preliminary plat" (alterations added). At the conclusion of the hearing the Board voted to approve the final plat. Green Hotels recorded the final plat of subdivision among the Land Records of Prince George's County on January 24, 2002.

On February 1, 2002, the City filed in the Circuit Court for Prince George's County, a petition for judicial review of the Board's approval of the final plat, which Green Hotels opposed. Eleven days later the City filed a motion, which Green Hotels also opposed, to stay the Planning Board's decision, so as to prevent Green Hotels from securing building permits and proceeding with the construction of Amber Ridge Shopping Center during the pendency of the action for judicial review. No stay was granted. The circuit court conducted a hearing on August 23, 2002, on the City's petition for judicial review of the Board's final plat approval, and issued a written opinion and order on April 1, 2003, upholding the Board's approval action. The City subsequently filed a timely notice of appeal to the Court of Special Appeals on May 20, 2003. In an unpublished decision dated February 25, 2004, that court upheld the Board's approval of the final plat of subdivision.

## II. Discussion

---

**8.** There is no requirement that anyone other than the applicant receive notice at this stage of the proceedings.

As the facts of the case *sub judice* are not in dispute, our review is confined to the Planning Board's application of the relevant statutes and the Prince George's County Code sections to the facts. As we stated in *Spencer v. Maryland State Bd. of Pharmacy*, 380 Md. 515, 528, 846 A.2d 341, 348 (2004), "When an agency makes 'conclusions of law' in a contested case, the court, on judicial review, decides the correctness of the agency's conclusions and may substitute the court's judgment for that of the agency's." Accordingly, we review the Planning Board's conclusions of law *de novo*.

## A. Planning Board's Jurisdiction to Consider Final Plat of Subdivision

■ The City contends that the then-pending action for judicial review of the preliminary plat precluded the Board from exercising jurisdiction to approve Green Hotels' final plat of subdivision for Amber Ridge Shopping Center. According to the City's argument, until such time as all appeals with respect to the preliminary plat are exhausted, the Board cannot approve a final plat lest the preliminary plat's pending appeals be rendered moot. In support of this contention, petitioner urges that "the phrase 'approval of the preliminary plat' as used in the first sentence of § 24–119(e) [9] must be interpreted to mean 'final approval,' including exhaustion of any appeals from the Planning Board's determination" (footnote added). Any contrary interpretation, the City cautions, would yield an "absurd result" that exploits the intended development controls:

"[A] developer who obtains approval of a Preliminary Plat does not even need to participate in any appeals from that approval. It can simply obtain final plat approval immediately and then file for building permits. The building permits would be perfectly legal, no matter what the ultimate outcome of the appeals with respect to the preliminary plan, because the permits would have been validly issued in

9. This sentence reads: "Upon approval of the preliminary plat of subdivision, the subdivider may proceed to prepare the final plat(s)."

accordance with an 'approved' final plat. The developer consequently could break ground and begin construction. At that point, whether the preliminary plat did or did not comply with the subdivision regulations no longer matters, because there is no way to stop the actual development of the property." [Alteration added.]

Petitioner urges that such renegade development can be avoided by what it suggests is a more reasonable reading of the opening phrase "[u]pon approval" in Prince George's County Code § 24–119(e) to mean after exhaustion of all actions for judicial review and appeals challenging the Planning Board's preliminary plan approval.

Although the parties point to our observation in *Dutcher*, 365 Md. at 418, 780 A.2d at 1148, that the General Assembly intended § 7–117 of the RDA clearly to delineate "two separate and distinct administrative processes and actions" for preliminary plats and for final plats, it must be conceded that the preliminary plat and the final plat operate as necessary parts of a larger scheme. The Board, as well as Green Hotels, point to the procedures outlined in the Subdivision Regulations to underscore the fact that although preliminary plat approval entitles a developer to seek final plat approval, the latter may not be obtained without the former, and the final plat must conform to the preliminary plat already approved. Respondents observe that the City incorrectly concludes that an applicant who attains final plat approval, necessarily proceeds, unfettered, to the conclusion of his development. Although a developer, having secured final plat approval, may choose to pursue building permits and even may undertake construction, until all legal challenges to the preliminary plat approval have been ultimately determined, his final plat approval is no *fait accompli*.[10] A developer's decision, in the face of pending litigation, to proceed beyond the final plat approval is undertaken at his own risk that he may, at some future time, have to cease or undo his development. As articulated

---

**10.** "An accomplished and presumably irreversible deed or fact." *The American Heritage Dictionary (4th ed.2000).*

by the intermediate appellate court's summary of the respondents' position, "if Planning Board approval of a preliminary plan is reversed on appeal, a final plat approved pursuant to that preliminary plan is no longer valid, and the developer is subject to legal action to undo any development that has occurred." *City of Bowie v. Prince George's County*, No. 643–2003, slip op. at 11 (Md.App. Feb. 25, 2004).

The interpretation of "upon approval" urged by Petitioner is inapposite to the reasonable interpretation indicated by the language of the Prince George's County Code § 24–119(e). We have said that "[t]he cardinal rule of statutory interpretation is to ascertain and effectuate the intention of the legislature." *Oaks v. Connors*, 339 Md. 24, 35, 660 A.2d 423, 429 (1995). Legislative intent must be sought in the first instance in the actual language of the statute. *Marriott Employees Fed. Credit Union v. Motor Vehicle Admin.*, 346 Md. 437, 444–45, 697 A.2d 455, 458 (1997); *Stanford v. Maryland Police Training & Correctional Comm'n*, 346 Md. 374, 380, 697 A.2d 424, 427 (1997) (quoting *Tidewater/Havre de Grace, Inc. v. Mayor and City Council of Havre de Grace*, 337 Md. 338, 344, 653 A.2d 468, 472 (1995)); *Coburn v. Coburn*, 342 Md. 244, 256, 674 A.2d 951, 957 (1996); *Romm v. Flax*, 340 Md. 690, 693, 668 A.2d 1, 2 (1995); *Oaks*, 339 Md. at 35, 660 A.2d at 429; *Mauzy v. Hornbeck*, 285 Md. 84, 92, 400 A.2d 1091, 1096 (1979); *Board of Supervisors v. Weiss*, 217 Md. 133, 136, 141 A.2d 734, 736 (1958). In discerning the legislative intent "absurd results in the interpretive analysis of a statute are to be shunned." *Mayor & Council of Rockville v. Rylyns Enters., Inc.*, 372 Md. 514, 550, 814 A.2d 469, 490 (2002). Furthermore, where the statutory language is plain and free from ambiguity, and expresses a definite and simple meaning, courts do not normally look beyond the words of the statute itself to determine legislative intent. *Gallegos v. Allstate Ins. Co.*, 372 Md. 748, 756, 816 A.2d 102, 107 (2003); *Marriott Employees*, 346 Md. at 445, 697 A.2d at 458; *Kaczorowski v. Mayor and City Council of Baltimore*, 309 Md. 505, 515, 525 A.2d 628, 633 (1987); *Hunt v. Montgomery County*, 248 Md. 403, 414, 237 A.2d 35, 41 (1968).

The language of § 24–119(e) allows the applicant to seek final plat approval "[u]pon approval of the preliminary plat of subdivision." The Court of Special Appeals summarized the implication of this provision:

"The specific grant of authority to the Planning Board under the RDA to review preliminary subdivision plans and final subdivision plats and the comprehensive, step-by-step procedures set forth in the subdivision regulations for carrying out such review make plain that the Planning Board is the body that first must approve a preliminary subdivision plan before it can approve the final plat for the property. Thus, '[u]pon approval of the preliminary plat' means, implicitly, upon approval by the Planning Board. The critical inquiry, for our purposes, is whether Planning Board 'approval' happens when the Planning Board acts, as the [respondents] maintain, or only upon the exhaustion of judicial review and appeal rights from the action, as the City maintains.

"Nothing in the language of [Prince George's County] Code section 24–119(e) or of the other regulations governing the subdivision of land in Prince George's County supports the interpretation of '[u]pon approval' advanced by the City. The statutory interpretation the City seeks would require us to add language to the regulations, in contravention of the rules of statutory interpretation. *Dyer* [*v. Otis Warren Real Estate Co.*, 371 Md. 576, 581, 810 A.2d 938, 941 (2002) ]."

*City of Bowie,* slip op. at 12–13 (alterations added).

The parties rely on our holding in *Powell v. Calvert County,* 368 Md. 400, 795 A.2d 96 (2002), albeit in support of somewhat differing propositions. In *Powell,* a landowner who operated an excavation business on his rural property, applied to the Calvert County Board of Appeals in pursuit of a special exception to allow him to park excavation equipment on the premises. After the Board of Appeals granted his request, several neighbors filed a petition for judicial review in the Circuit Court for Calvert County, which affirmed the Board of Appeals's decision. The neighbors then appealed to the Court

of Special Appeals. While the appeal was pending in the intermediate appellate court, the Board of County Commissioners of Calvert County amended the zoning ordinance, via resolution, to eliminate the possibility of obtaining a special exception for the outdoor storage of excavation equipment in a rural district. The Court of Special Appeals subsequently reversed the Board of Appeals's decision based on deficiencies in the record and directed the circuit court to vacate the Board's decision. On remand, the Board of Appeals again granted the landowner's special exception pursuant to the law in effect at the time of the original hearing. Following a petition for judicial review proceeding in the circuit court and an appeal to the Court of Special Appeals, we granted *certiorari*, *Powell v. Calvert County*, 364 Md. 534, 774 A.2d 408 (2001). We concluded that the landowner in *Powell* had "never satisfied the criteria for a vested right" since at no time had he lawfully stored his excavation materials under a valid special exception. *Powell*, 368 Md. at 416, 795 A.2d at 105. We noted the Court of Special Appeals's *Powell II*[11] observation that " 'changes in zoning laws, such as zoning reclassifications, ordinarily will apply retrospectively *by their very terms* ' " and, as such, we determined that the amended ordinance was controlling. *Id.* at 408, 795 A.2d at 100 (emphasis original). Thus, we held that the landowner "never obtained a final valid exception prior to the change in the law and, therefore, never obtained a vested right." *Id.* at 410, 795 A.2d at 101. Furthermore, we stated the effect of ongoing litigation declaring that "there is no different 'rule of vested rights' for special exceptions and the like. Until all necessary approvals, including all final court approvals, are obtained, nothing can vest or even begin to vest." *Id.* at 409, 795 A.2d at 101.

---

11. *Powell v. Calvert County* had two iterations in the Maryland circuit and intermediate appellate courts. The first resulted in an unpublished opinion by the Court of Special Appeals to which we referred in our singular *Powell* opinion as *Powell I.* We deemed *Powell II* the second Court of Special Appeals's opinion, which was published and can be found at 137 Md.App. 425, 768 A.2d 750 (2001).

Petitioner cites *Powell,* as well as *National Waste Managers, Inc. v. Anne Arundel County,* 135 Md.App. 585, 763 A.2d 264 (2000) (holding that the two-year validity period of waste management company's special exception approval to operate a landfill was tolled during the course and duration of the litigation challenging both the approval and the permits needed to operate the landfill) primarily to argue that a property owner who receives final plat approval, while approval of the preliminary plat is under judicial review, and who then secures building permits and begins construction based on the *final* plat approval, *does* in fact obtain vested rights, contrary to *Powell's* holding, because there is no formal mechanism to revoke the preliminary approval once the successful applicant obtains final plat approval. The City alleges further that there is no statutory or regulatory procedure for "unrecording" a recorded final plat, nor is there any authority that mandates or permits "the invalidation of an otherwise valid building permit or development approval entered in a wholly separate proceeding as a consequence of court action taken after the issuance of the permit or development approval in a different proceeding." In support of its proposition, petitioner argues that a preliminary plat approval should be treated in the same manner as a special exception approval insofar as the approval's validity is ultimately indeterminate until the conclusion of all litigation. Respondents, on the other hand, invoke *Powell's* commentary on vested rights to underscore the fact that a final plat approval is not axiomatically a valid approval, but nevertheless, a final plat approval *is* valid until its underlying preliminary plat approval might be deemed invalid.

Petitioner seems to overlook the fact that a final plat cannot be sustained ultimately without the foundation of a valid preliminary plat.[12] Therefore, the holder of a vulnerable preliminary approval who chooses to proceed to final approval, and then procure permits and builds in reliance thereon, has

---

**12.** We do observe, however, that as of the time of our consideration of the case *sub judice,* the challenges to the preliminary plat approval's validity have been exhausted.

undertaken a, presumably, calculated risk, which he certainly may choose to do. As we stated in *Powell,* "[p]ersons proceeding under [Board approval] prior to finality are not 'vesting' rights; they are commencing at 'their own risk' so that they will be required to undo what they have done if they ultimately fail in the litigation process." *Id.* at 410, 795 A.2d at 101 (alteration added). Should a developer's underlying preliminary approval properly be determined invalid, he risks exposure to suits and the enforcement of regulations compelling him to return the property to the status quo or to make other amends or provide other remedy. This Court cannot presume to dictate the business risks in which a developer may choose to engage.[13]

Accordingly, we hold that the Planning Board had proper jurisdiction to consider Green Hotels' final plat and the Board was not required to withhold its consideration until such time as all legal challenges to the preliminary plat's approval were exhausted.

### B. Time Period for Filing of the Final Plat of Subdivision

We turn now to petitioner's next question which rests not upon the City's earlier challenge to the Board's jurisdiction to consider Green Hotels' final plat, but arises from the City's alternative argument that the validity period of Green Hotels' preliminary plat had expired prior to the applicant filing for final plat approval.

### 1. Timeliness of filing for final plat approval

■ As noted, the Board approved Green Hotels' TFMP and its preliminary plat of subdivision on June 18, 1998. In

---

**13.** The present case concerns the construction of commercial property, as opposed to residential property. In either event, however, subsequent users, whether lessees in shopping centers or purchasers of units, commercial or residential, would likewise be acting at their own risk during the pendency of judicial review. They would need contractually to protect themselves from the potential ramifications of an adverse judicial ruling.

the absence of an extension, therefore, that preliminary plat was to be effective for two (2) years from its approval date according to the provisions of Prince George's County Code § 24–119(d)(5). Indeed, pursuant to § 24–119(d)(5)(A), by letter dated May 1, 2000, Green Hotels sought and approximately one and one-half months later, was granted a one-year extension over the objections of the City. The extension served to fix the expiration date of its preliminary plat approval at June 18, 2001. With the District Council's April 2000 reversal of the Board's approval of Green Hotels' TFMP, the parties apparently proceeded under the assumption that an invalidated TFMP negated the Board's approval of the preliminary plat. Nevertheless, amid the uncertainty of the preliminary plat's status, Green Hotels endeavored to submit its final plat to the Board on June 8, 2001, *i.e.*, within the allowable three year period.[14] The Board, however, declined to accept or process the final plat, citing the lack of a "currently approved Preliminary Plan with respect to the Amber Ridge property." Thus, the final plat was timely filed, but rejected. This timely filing satisfied the statutory time restraints, in and of itself. Nevertheless, we will further consider the issues as presented.

Following the circuit order's application of our *Dutcher* decision to vacate the District Council's reversal of the TFMP, Green Hotels resubmitted its application for final plat approval in late December 2001. The Board, acting within Code § 24–119(e)(1)'s mandated thirty-calendar-days action period, heard and approved Green Hotels' final plat of subdivision on January 3, 2002.

The City asserts that Green Hotels' approval expired, at the latest, on June 18, 2001, thus rendering its December 2001 final plat submission out of time. Accordingly, the City argues that the Planning Board erred in accepting Green Hotels' application and approving the final plat. Respondents counter that either the period in which Green Hotels was precluded from filing its final plat served to toll the validity

---

14. Two years, plus a one-year extension.

period until the judicial proceedings were completed in its favor, or, alternatively, upon the preliminary plat approval's reinstatement in November 2001, a new validity period began to run. In either case, respondents maintain that the preliminary plat was valid at the time of Green Hotels' December 21, 2001, submission of its final plat, and the Board properly accepted the final plat and properly approved it on January 3, 2002.

As we have already stated, we do not agree with the City's interpretation of the "[u]pon approval" language in the first line of Code § 24–119(e) to mean upon the resolution or exhaustion of all legal challenges to the Planning Board's approval. The implication of our determination, however, is not, as the City insists necessarily follows, that the "validity period begins when the Planning Board approves the preliminary plan and continues to run, uninterrupted, for two years (or three years if an extension is granted), irrespective of the outcome of any subsequent legal challenge." *City of Bowie,* slip op. at 21.

The Court of Special Appeals did not accept petitioner's position; nor do we. That court stated:

"To be sure, a consistent interpretation of the use of the words 'upon approval' and 'approval,' in sections 24–119(e) and 24–119(d)(5), respectively, compels the conclusion that the validity period for the preliminary plan for the Property commenced when that plan was approved by the Planning Board, on June 18, 1998. It does not follow, however, that once the validity period began, it continued to run, without interruption, even though the preliminary plan was, for a period of time, invalidated. Indeed, that conclusion is illogical. A property owner must have an approved and valid preliminary plan in hand to apply for and obtain final plat approval.

"Plainly, the District Council's reversal of the Planning Board's approval of the TFMP temporarily affected the validity of the preliminary plan, and hence temporarily affected the validity period for the preliminary plan, either

by tolling the validity period or, once the circuit court vacated the District Council's decision, commencing a new validity period. But it simply cannot be the case that the validity period expired while Green Hotels was precluded, by the fact that the approved preliminary plan was no longer valid, from filing an application for final plat approval."

*City of Bowie,* slip op. at 22.

### 2. Tolling of time period for further action

The City goes on to argue that "because the *Dutcher* Court held that the District Council never had any jurisdiction to begin with over the City's appeal of the TFMP, the City's appeal to the District Council was a nullity and, as such, could not have stopped the clock on the original approval by the Planning Board."

Such a specious premise misinterprets the thrust, or at least the application, of our *Dutcher* decision to the case *sub judice.* As the Court of Special Appeals stated:

"In *Dutcher,* the Court held that there was no authority in the RDA allowing for an appeal of a TFMP to the District Council. On that ground, the Court vacated the District Council's decision in that case. It was not until the circuit court in the case at bar applied that holding, however, and issued a ruling in the judicial review action, that the preliminary plan was revived. The validity period for the preliminary plan was not expired when final plat approval was sought and granted."

*City of Bowie,* slip op. at 23–24.

While we have stated that the final plat filed on June 8, 2001, but rejected by the Board, was in fact timely filed, even were we to hold to the contrary in respect to the June 8, 2001, filing, the final result would be the same. Whether the period for Green Hotels to seek preliminary plat approval was tolled or whether a new validity period commenced, the result would be the same: Green Hotels filed its final plat in a timely

fashion and the Board properly approved the final subdivision plat.

The effect of legal actions challenging the preliminary plat approval on the running of the time period for further action to obtain final plat approval has woven its way into the arguments of the parties at every level of this case. Petitioner states that if we were to make a "finding that the December 2001 filing was timely [such a holding] requires a determination that the word 'approval' must be interpreted with reference to events that occur on appeal. It assumes that an action that occurs on appeal can toll the filing period" (alteration added). The Board observes that "[t]he RDA is silent as to whether such an appeal of a subdivision application approved pursuant to the [Prince George's County Code] Subdivision Regulations it enables is stayed during the time of an appeal" (alteration added).

Although Maryland Rule 7–205 [15] provides that a party may file a petition with the court seeking review of the decision of an administrative body, the mere filing of the petition, itself, does not stay the agency's decision. In addition, neither this Rule, nor other provisions embodied within either the RDA or within the Subdivision Regulations, addresses the effect of such a filing on the time periods within which an applicant who received preliminary plat approval must take further action. Petitioner has assumed that actions on appeal toll the period for filing the final plat and that during this period the preliminary plat approval does not exist and thus, final plat approval is inappropriate. Respondents posit that tolling should occur as a matter of fairness. Accordingly, the parties' uncertainty bears some discussion.

---

**15.** Md. Rule 7–205 states, "The filing of a petition does not stay the order or action of the administrative agency. Upon motion and after hearing, the court may grant a stay, unless prohibited by law, upon the conditions as to bond or otherwise that the court considers proper." We note that the City did seek a stay of the Board's approval in the case *sub judice,* but the City's motion for a stay was denied by the circuit court.

In our recent case, *Arroyo v. Board of Educ. of Howard County*, 381 Md. 646, 851 A.2d 576 (2004) (holding that wrongful termination suit by employee, who had been dismissed from his position as a guidance counselor, filed more than three years after the State Board of Education's affirmance of the local Board's termination decision was beyond the statute of limitations for this type of claim) we examined the interrelation of the running of a statute of limitations in the context of simultaneous administrative and judicial reviews, and the requirement to exhaust one's administrative remedies. We explained,

> "In summary, in cases where the administrative remedy is primary, and there are alternative independent judicial remedies available, the alternate judicial remedy may not be resolved (although the action can be brought and stayed) prior to the exhaustion of the administrative remedy, *i.e.,* the final agency determination. It is from no later than this point that the limitation period begins to run."

*Id.* at 667, 851 A.2d at 589. Our *Arroyo* holding, although involving very different facts, a different procedural situation, and directed to different legal doctrines, illustrates the trial court's need to remain cognizant of the running of a period for further action, be it judicial or administrative, during the pendency of judicial and administrative review processes.

In our even more recent case, *Maryland Reclamation Assoc., Inc. v. Harford County*, 382 Md. 348, 855 A.2d 351 (2004), the landowner had urged this Court to provide it with some level of assurance that its use of its State-issued permit to operate a rubble landfill would not be impeded by Harford County's subsequent land-use ordinance related to such landfills. *Id.* at 353, 855 A.2d at 354. We did not address this specific issue, finding that the landowner had failed to exhaust its administrative remedies. *Id.* at 354, 855 A.2d at 355. Notwithstanding, Judge Harrell pellucidly articulated that in certain circumstances in which a litigant properly pursues simultaneous legal and administrative proceedings, a stay of the first proceeding, in lieu of its dismissal, while external

determinations remain pending concerning the second proceeding, is the correct course of action:

"When a litigant is entitled to bring two separate legal proceedings in an effort to obtain relief in a particular matter, when the litigant institutes the first of those proceedings and the case is pending in a trial court, and when the trial court is unable to decide the merits of that case because of primary jurisdiction or exhaustion principles associated with the second proceeding, the trial court ordinarily should stay the first proceeding for a reasonable period of time. During that period, the litigant may pursue and obtain a final administrative decision in the second proceeding. If still aggrieved, the litigant will be able to file an action for judicial review in the second proceeding, and the trial court may hear the two cases together. If the litigant, within a reasonable period of time, fails to pursue the second proceeding, the court should then dismiss the first proceeding."

*Id.* at 367, 855 A.2d at 362. Thus, in *Maryland Reclamation Assoc.*, we indicated a preference to preserve a litigant's claims when external administrative reviews remained pending. The situation in the case *sub judice* is similar, albeit it is Green Hotels' right in an administrative process, which needs to be preserved so that it can pursue final plat approval without running afoul of the two (or three-year) preliminary plat validity period.

In *National Waste*, supra, the Court of Special Appeals examined Maryland caselaw, unsuccessfully, for analogous examples of tolling applied to cases involving litigation that extended beyond the duration of a special exception's validity period and the consequent permit eligibility period. *Id.* at 608, 763 A.2d at 277. That court also undertook a survey of other states' positions with respect to expiration of a period for which an applicant had acquired a right of use, but was unable to commence such use due to ongoing legal challenges. Commentary from a Connecticut intermediate appellate court case is particularly noteworthy in this context:

"The regulatory process is not designed to be a spider's web, snaring one who follows all the regulations and statutes, obtains all the necessary permits, and successfully defends a series of appeals, but then loses his right to proceed because the passage of time has caused the permits to expire."

*Fromer v. Two Hundred Post Assoc.*, 32 Conn.App. 799, 811, 631 A.2d 347, 353 (1993) (holding that limitations on a developer's receipt of a wetlands permit to construct a condominium complex the permit should have been tolled until a plaintiff's six years of litigation was terminated). Ohio's intermediate appellate court dealt with the issue somewhat differently in *Cardinale v. Ottawa Reg'l Planning Comm'n*, 89 Ohio App.3d 747, 627 N.E.2d 611 (1993) (tolling the one-year time requirement for satisfying precursory conditions to final approval where developer who had received conditional plat approval had been unable to proceed due to neighboring landowners' legal challenges), but declined "to hold that a legal challenge to a conditional final plat approval automatically extends the time for compliance with the conditions," *Id.* at 753, 627 N.E.2d at 615, citing its concerns that "in other circumstances, with other parties, a developer may not be proceeding with due diligence [ ] [or] . . . the passage of time may be accompanied by a change of conditions which would cause an automatic stay to prejudice a community." *Id.* (alterations added). The *Cardinale* court, however, looked favorably upon *Preseault v. Wheel*, 132 Vt. 247, 253, 315 A.2d 244, 247 (1974) (holding that properly approved building permits granted to a developer should be reissued if the permits' one-year validity period expired during the pendency of a legal challenge by adjacent landowners and the developer "rather than sitting on his permit . . . has spent a substantial amount of time sitting and standing in courtrooms" trying to maintain his permits' validity) and held that equitable considerations make tolling appropriate under certain circumstances:

" '[W]here a final plat approval has been made on condition that specific deficiencies be corrected within a specified time, and the developer of that approved plat is prevented

from satisfying the named conditions by the legal interven-
tion of third-party adversaries, the developer's time within
which to comply with the conditions should be tolled when it
is equitable to do so."

89 Ohio App.3d 747, 753–54, 627 N.E.2d at 615 (alteration
added). Maryland's intermediate appellate court similarly
approved of the Vermont Supreme Court's position in *Pre-
seault* and incorporated the following reasoning in its *Nation-
al Waste* determination:

"For this Court to hold that a developer, proceeding as
expeditiously as possible, must be denied reissuance of the
permit he first applied for and received solely because his
application for a second essential permit resulted in litiga-
tion of more than a year's duration would go beyond the
desired and worthwhile goal of controlling development.
Such a holding would make development a pure gamble;
success would depend on the whim of adversaries to litigate
or not. This result would contravene our announced policy
that a good faith developer should be able to proceed with
assurance.' "

*National Waste*, 135 Md.App. at 613, 763 A.2d at 279 (added
emphasis omitted) (quoting *Preseault*, 132 Vt. at 255, 315 A.2d
at 248).

■ Although the case *sub judice* involves neither the
issuance of a permit stemming from a special exception, nor a
question of exhaustion of administrative remedies, we adopt
the general reasoning of the above cited cases that tolling or
other means of preserving the applicant's rights, should be
considered when litigation initiated by opponents interferes
with the ability of the holder of preliminary plat approval to
proceed to final plat approval within the final plat approval
period. Despite the fact that this determination has a some-
what opposite application, we find that principles of equity
compel a tolling, narrowly tailored to the facts of the case *sub
judice*. That is, when a developer cannot proceed administra-
tively because of litigation or when the administrative entity
declines to permit him to proceed while matters are being

litigated, the time period within which an applicant for subdivision must take further action after receiving preliminary plat of subdivision approval is to be tolled during the time that litigation is pending in the circuit court.[16] We recognize that such tolling might be perceived as a court-sanctioned extension of preliminary plat approval (or denial), but we are confident that we have not occasioned any mischief because such a provision serves to protect the rights of the developer, while permitting a challenging party to proceed with its petition for judicial review, by avoiding a war of attrition, motive or effect. What we do is to avoid the mischief that could otherwise occur if litigation is used solely to cause administrative deadlines to be missed.[17]

## C. Notice of Final Plat Approval Action

The City's third and final issue challenges the sufficiency of the notice given of the filing of the application for final plat approval and the Planning Board's hearing thereon. The City asserts that it was denied due process rights by the Board's failure to provide it notice that Green Hotels had filed for final plat approval and that the Board had scheduled the matter for hearing. The parties argue at length whether the Board's action in determining whether the final plat conformed to the preliminary plat should be deemed ministerial, and thus relieved of any externally-imposed formal notice requirement or should be labeled discretionary, therefore making it incumbent upon the Board to provide actual notice to the City.

We stated in *Hyson v. Montgomery County Council,* 242 Md. 55, 217 A.2d 578 (1966):

"It is elementary that governmental bodies, tribunals, agencies, boards (and by whatever other appellations they

---

16. Via our holding in *Dutcher,* such petitions for judicial review of a Planning Board's action on a preliminary plat of subdivision are to be brought in the circuit court. *See Dutcher, 365 Md.* at 428, 780 A.2d at 1154.

17. We do not mean to indicate one way or the other that "the City" was litigating for that purpose in the case at bar.

may be known), and officials, in the performance of their public duties, exercise functions that are divided into three general categories: executive [*i.e.,* ministerial], judicial, and legislative.... And functions, when they are not purely and completely judicial or legislative in nature, but have qualities or incidents resembling them, are referred to as quasi-judicial or quasi-legislative [*i.e.,* discretionary]."

*Id.* at 62, 217 A.2d at 582–83 (alterations added). Ministerial acts are objective in nature and include, for example, the issuance of a building permit, predicated upon presentation of final plat approval, as in the case *sub judice.* On the other hand, quasi-judicial functions employ the use of discretion, a term which "denotes freedom to act according to one's judgment in the absence of a hard and fast rule. When applied to public officials, 'discretion' is the power conferred upon them by law to act officially under certain circumstances according to the dictates of their own judgment and conscience, and uncontrolled by the judgment or conscience of others." *Schneider v. Hawkins,* 179 Md. 21, 25, 16 A.2d 861, 864 (1940); *see Schultze v. Montgomery County Planning Bd.,* 230 Md. 76, 80, 185 A.2d 502, 504 (1962). While it may be said that " '[i]n a strict sense, every action of a government employee, except perhaps a conditioned reflex action, involves the use of some degree of discretion,' " the act of determining conformance of a final plat to a preliminary plat, as in the case *sub judice,* involves no application of discretion in respect to facts. *Ashburn v. Anne Arundel County,* 306 Md. 617, 623, 510 A.2d 1078, 1081 (1986) quoting *Swanson v. United States,* 229 F.Supp. 217, 219–20 (N.D.Cal.1964).

The City also argues that it was entitled not just to notice but to "meaningful" notice of the Board's acceptance and intended consideration of Green Hotels' final plat. Green Hotels contends that the Subdivision Regulations, specifically Code § 24–119(d)(3), are purposely silent as to any procedure requiring notice or public hearing at the final plat stage:

"The statutory framework clearly provides that the merits of the subdivision proposal are adjudicated at the preliminary plan of subdivision phase. It is at that stage that the

Planning Board is acting in a quasi-judicial capacity in determining whether the proposal meets the requirements of the Subdivision Regulations. Consequently, the filing of a preliminary plan of subdivision application triggers the requirement for notice and an opportunity to be heard. . . . "

Indeed, our discussion in *Dutcher,* in which we noted that the General Assembly intended to distinguish the preliminary plat and final plat processes by assigning different timetables, different deadlines and different review procedures, 365 Md. at 418, 780 A.2d at 1148, bears out this contention. The final plat approval operates differently from the preliminary plat approval and involves nowhere near the level of scrutiny exercised in preliminary plat evaluation. *See* Md.Code (1957, 1997 Repl.Vol.), Art. 28 § 7–117 (explaining the reviews, comment and action periods for preliminary subdivision plats).

The Board's role at the time of its decision whether to grant final plat approval is to determine whether the final plat has been prepared "in accordance with the approved preliminary plat . . . [including] any modifications made by the Planning Board." Code § 24–119(e). At no time has the City taken the position that Green Hotels' final plat was anything other than in conformance with the preliminary plat and the relevant accompanying conditions imposed by the Board.

Moreover, respondents urge that the action at final plat consideration is devoid of discretion:

"When reviewing and approving a final plat application such as that for [the instant final plat], however, the Board does not exercise any judicial or quasi-judicial authority, as the Board has no jurisdiction to make substantive decisions when reviewing a final plat application." [Alteration added.]

We agree. The approval of a final plat is based upon conformance with the preliminary plat. In considering the final plat, the Board's only options were to approve or to reject based solely upon conformance or the lack thereof. The Board did not have authority to impose further conditions. Thus, under the circumstances here present, the Board acted in a ministerial fashion.

■ Even if we were to determine that there was some requisite level of notice for the Board's consideration of the final plat, the City's contention of lack of notice is without merit. The City *did* have notice of the January 3, 2002, meeting, both by an informal telephone call from a Planning Board staff member to a City staff member and, as indicated by the Board's counsel, by informal, though not required by statute or ordinance, publication and mailing to each municipality of the Planning Board's weekly agenda. Undeniably, the City did have actual knowledge of the hearing because its counsel faxed a letter of opposition to the Board on January 2, 2002, and counsel attended and participated in the January 3, 2002, hearing.

The City challenges this "meager" notice as precluding any meaningful participation, but, as the Court of Special Appeals observed, the City has not shown that, "with more advance notice, it would have been able to make a substantive challenge to the final plat application that it did not actually make. In other words, there is nothing in this record to show that the timing of the notice afforded the City had any effect whatsoever on its ability to challenge the final plat application." *City of Bowie,* slip op. at 25. Moreover, we call attention to the permissive language found in Md.Code (1957, 1997 Repl.Vol.), Art. 28 § 7–117.[18] Accordingly, we hold that the City suffered no prejudice by what it regards as insufficient notice of the Board's scheduled action on the application for final plat of subdivision.

### III. Conclusion

---

18. Md.Code (1957, 1997 Repl.Vol.), Art. 28 § 7–117, in language identical to that found in the 2003 Replacement Volume, provides in relevant part:

"In his application, however, the applicant may waive the hearing and notice, and the approval of any plat exactly as submitted by the applicant is a waiver of the hearing and notice. The subdivision regulations may include provisions for notice to owners of properties that would be substantially affected by approval of any subdivision plat and for public hearings on the applications...."

We hold that the Prince George's County Planning Board had proper jurisdiction when it considered and approved Green Hotels' final subdivision plat despite the fact that appeals of the underlying preliminary subdivision plat approval were pending. Generally, applicants in such circumstances may proceed during judicial review, but they do so at their own risk. We further hold that Green Hotels' preliminary plat approval had not expired at the time it first submitted its final subdivision plat for approval, but its filing was rejected, and it had not expired when it subsequently refiled for final plat approval. We extend this holding by stating that the time period within which a successful applicant for subdivision must take further action to procure final plat approval is tolled when a petition for judicial review of the preliminary plat approval is filed by an opponent. As the Board's act of approving or rejecting the final plat is a ministerial function, we find no merit in the City's contention that it was denied due process by the Board's failure to provide it specific and individualized notice of the Board's receipt and scheduling of Green Hotels' application for final plat approval.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED; COSTS TO BE PAID BY PETITIONER.**

WILNER, J., Concurs.

WILNER, J.

I concur in the result reached by the Court, but only because the validity of the preliminary plat has been sustained. The path chosen by the Court, I fear, can lead to some real problems, unnecessarily. There is a better way to achieve the same result.

As the Court points out, the basic substantive issues in these development cases arise in connection with the preliminary plat. That is the stage at which, among other things, the adequacy of roads, schools, and other infrastructure facilities must be considered and decisions made with respect to whether and how the development will proceed. Any changes or conditions found necessary by the Planning Board must be

incorporated into the final plat, which "shall be prepared in accordance with the approved preliminary plat and shall include any modifications made by the Planning Board." Prince George's County Code, § 24–119(e). As the Court observes, the issue with respect to the final plat is essentially whether it, in fact, is consistent with the preliminary plat as approved by the Board—*i.e.*, whether it adequately incorporates all of the changes and conditions required by the Board.

The county code establishes two time requirements designed to expedite the approval process. One of those time requirements anticipates the prospect of a judicial review challenge to a preliminary plat approval but the other does not, and therein lies part of the problem. The first requirement concerns the period within which a final plat must be submitted. An approved preliminary plat remains valid for two years from the date of approval, subject to permissible extensions, up to a year, of the validity period. A final plat must be submitted to the Planning Board within that two-to-three-year period. The second requirement concerns approval of a final plat. The Planning Board has but thirty days after submission of a final plat (which, with the consent of the applicant, may be extended for an additional thirty days) in which to act on the final plat. If the Board does not disapprove the final plat within that period, it is deemed approved.

An action for judicial review of an approval of a preliminary plat can create a problem with respect to these time limits and, indeed, with respect to the course of the development. In most cases, I would hope, two to three years should be enough time to resolve a judicial challenge to a preliminary plat approval, but there are certainly some cases, including this one, in which more time is required. In light of that prospect, there are essentially two options: (1) put approval of any final plat submitted to the Board "on hold" until the validity of the preliminary plat is resolved; or (2) allow the Board to approve the final plat based on its challenged approval of the preliminary plat and then let the chips fall where they may. The Court adopts the second option. I would choose the first.

The Court reaches two conclusions regarding approval of the final plat that I find troubling. First, it regards approval of the final plat as a purely ministerial act, one that does not even require notice to those who protested the preliminary plat and who will also want to challenge the final plat. Second, it concludes that, if a court, on judicial review, reverses a preliminary plat approval in some material way, a final plat based on the flawed preliminary plat will also, automatically, lose its validity.

The Court finds approval of the final plat to be ministerial because the only issue is whether that plat conforms to the approved preliminary plat. That, to me, does not make the approval ministerial. There may be considerable leeway in interpreting conditions that the Board has attached to the approval of the preliminary plat, and developers will certainly have an incentive to interpret those conditions in a way that gives them the maximum flexibility at the least cost. I can well foresee arguments over whether the final plat truly conforms to those conditions—where reasonable disagreements can occur and a judgment call will have to be made. Protestants should have a right to examine the final plat and to voice objections to it. By holding that approval of the final plat is ministerial, the Court suggests that a developer has a right to mandamus, that, even if the Planning Board on its own has some question whether the final plat adequately incorporates conditions attached to the preliminary plat approval, it must approve the final plat anyway. The Court may not mean that, and I surely hope that it doesn't, but that is what regarding final plat approval as ministerial implies. I do not regard final plat approval as ministerial.

In concluding that a reversal of preliminary plat approval by a court on judicial review will automatically invalidate any final plat approval and any permits issued in reliance on that approval, the Court also makes certain assumptions that may not prove to be accurate. If the protestants timely seek judicial review of the final plat approval, the cases can be consolidated, and, if the court vacates the approval of the preliminary plat, it will presumably vacate approval of the

final plat as well. If, for whatever reason (such as not being notified of the approval of the final plat, which could happen under the Court's approach), the protestants fail, in a timely manner, to seek judicial review of the approval of the final plat, they may be out of luck. A court could find that, by not seeking timely judicial review of the final plat, they have waived their right to complain about that approval, or have made their complaint about the preliminary plat moot. To be safe, the protestants will have to seek judicial review of the Board's approval of the final plat, thereby requiring two judicial actions instead of just one. That's not very efficient.

The Court seems to assume that a second action for judicial review is not necessary. It holds that, if a court were to vacate approval of the preliminary plat, the final plat would lose its validity automatically. It holds further that any building, grading, or other permits that have been issued in reliance on the final plat approval also would lose their validity automatically, even if construction in reliance on those permits has commenced. That may be the ultimate judicial decision in the inevitable litigation that would ensue, but it is a leap—a compounding of assumptions that could prove very costly for both the developer and others. The Court, at least tacitly, is assuming that no construction will actually commence, either because the developer will not risk the prospect of having to undo what it has done or because of other institutional constraints—lenders will not close on construction or other loans while judicial review is pending. That may be so in many cases, but perhaps not in all. Title insurance often contains an exception for land use approvals, and lenders may not pick up the pendency of a judicial review action.

The Court's approach has the capacity to leave a lot of dirty dishes on the table. Its only response is that, in seeking judicial review of the preliminary plat approval, the protestants can seek a stay of that approval. Yes, they can ask, but there is no assurance that a stay will be granted. As we have often made clear, an action for judicial review does not ordinarily stay the administrative action being challenged, and discretionary stays are not easy to come by.

There is another approach, one that avoids all of these problems. The law allows a period of two years after administrative approval of a preliminary plat for the developer to file a final plat, and it permits an extension of up to a year. If judicial review of the preliminary plat approval is sought, there is no rush to file a final plat. One would think that at least the Planning Board would want to know whether the preliminary plat is valid before acting on the final plat. If the judicial review action drags on to the point that the time deadline for filing the final plat becomes a problem, the developer can file the plat and have the Planning Board delay action on it. The only impediment to that is the requirement that the Board act on the final plat within 30 days, but that can easier be stayed by a court than the preliminary plat approval, and, indeed, it may well be an abuse of discretion for a court not to stay that requirement while the validity of the final plat hinges on a judicial decision regarding the preliminary plat. As a practical matter, this approach creates no additional delay but avoids all of the possible problems inherent in the Court's approach.

I agree with the result because I do not believe that the Planning Board was without jurisdiction to approve the final plat. I think it was wrong in acting prematurely, but it was not without jurisdiction. When the court ultimately affirmed approval of the preliminary plat, the validity of the final plat was established.